IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DIRK D.,[1] | No. 6:20-cv-1938-MO |
| Plaintiff, | OPINION & ORDER |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

MOSMAN, District Judge:

    This matter comes before me on Plaintiff Dirk D.'s Complaint [ECF 1] against Defendant Commissioner of the Social Security Administration. For the reasons given below, I AFFIRM the Commissioner's decision and DISMISS this case.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

## PROCEDURAL BACKGROUND

On July 28, 2017, Plaintiff applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, alleging disability beginning February 16, 2017. Tr. 222-28. The Social Security Administration ("SSA") denied his claim initially and upon reconsideration. Tr. 157-61, 165-67. Plaintiff appeared and testified at a hearing held on September 10, 2019, before Administrative Law Judge (ALJ) Cynthia Rosa. Tr. 91-128. On November 13, 2019, the ALJ issued a decision finding that Plaintiff had not been under a disability at any time from the alleged onset date through the date of the decision. Tr. 12-29. Plaintiff filed an appeal, and the Appeals Council denied review. Tr. 1-7.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff engaged in substantial gainful activity (SGA) from February through July 2017, but not at any other time since the alleged onset date. Tr. 17. At step two, the ALJ determined that Plaintiff had the following severe impairments: history of bilateral conjunctivitis and uveitis, and ankylosing spondylitis. Tr. 17. At step three, the ALJ found no impairment that met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18. The ALJ assessed Plaintiff's residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) except: He can frequently climb ramps and stairs, occasionally climb ropes, ladders, and scaffolds; he can frequently stoop, occasionally crouch, crawl, and kneel; he can do occasional overhead work bilaterally; he should avoid concentrated exposure to hazards and to lighting above a normal, indoor office light level.

Tr. 18.

At step four, the ALJ determined that Plaintiff was able to perform past relevant work as a chemical engineer/nuclear engineer. Tr. 23. Alternatively, at step five, the ALJ determined that

there are jobs that exist in significant numbers in the national economy that the claimant can perform such as agricultural produce packer, industrial cleaner, and hospital cleaner. Tr. 25. The ALJ therefore found Plaintiff not disabled. Tr. 25.

## LEGAL STANDARD

Courts must uphold the ALJ's decision if it "was supported by substantial evidence and based on proper legal standards." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). When "evidence is susceptible of more than one rational interpretation ... the ALJ's conclusion ... must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Errors in the ALJ's decision do not warrant reversal if they are harmless. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## DISCUSSION

Plaintiff raises four issues with the ALJ's decision. Plaintiff argues the ALJ erred by (1) erroneously discounting his symptom testimony, (2) erroneously discounting lay witness testimony, (3) improperly rejecting relevant medical opinions, and (4) providing incomplete hypotheticals to the vocational expert (VE) at step five. I address these issues in turn.

**I.  Subjective Symptom Testimony**

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 114, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."

*Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.*

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

At the hearing, Plaintiff testified that he has a sensitivity to LED lights and had to retire early from his job because the building he worked in had recently installed lights that caused eye symptoms. Tr. 97. Plaintiff explained he has a limited ability to use computers because of the light they emit. Tr. 98. He stated that the only treatment for Plaintiff's eye condition is to avoid exposure to LED, bright, or flickering lights. Tr. 99. Plaintiff described attending a political gathering about once per month and traveling to Virginia twice a year. Tr. 100. He is able to work in his garden in short spurts because of his physical limitations from back pain. Tr. 101. Plaintiff estimated he could sit for 15 to 30 minutes. Tr. 104. Plaintiff's uveitis causes eye pain, headaches, and tinnitus. Tr. 106. He has difficulty looking up or from side to side as a result of his neck pain. Tr. 108. Plaintiff has trouble squatting. Tr. 109. He estimated he could stand for 30 minutes. He is unable to reach overhead with his right arm. Plaintiff can walk for a mile or two

and then must rest. Tr. 110. He does not drive at night. Tr. 112. He described taking a trip to Montana on one occasion, but had to stop every 2 hours along the way. Tr. 113.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 20. However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of his conjunctivitis symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 20. Specifically, the ALJ found Plaintiff's symptom allegations were inconsistent with his improvement with treatment (or subsequent failure to follow treatment recommendations),[2] and that Plaintiff's daily activities conflicted with his symptom allegations. Tr. 20.

*A. Improvement with Treatment & Failure to Follow Treatment*

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of ... symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Ninth Circuit has held that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Additionally, an ALJ may consider a claimant's

---

[2] Defendant also proffers the additional rationale that "Plaintiff's complaints [of vision impairments] did not line up with his medical records." Def. Br., ECF No. 16 at 4. Although the ALJ obliquely references the fact that "[t]he medical record does not support the severity of claimant's alleged limitations," the ALJ did not point to any objective medical evidence that clashed with Plaintiff's testimony outside of his history of successful treatment. Tr. 20. The Court is constrained to review only "the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Because the ALJ did not rely on conflict with objective medical evidence as a reason to discount Plaintiff's symptom testimony, the Court will not consider it on review.

5 – OPINION & ORDER

unexplained or inadequately explained failure to follow a prescribed course of treatment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). "[I]n order to get benefits, an individual must follow treatment prescribed by his or her physician if the treatment can restore the ability to work, unless the individual has an acceptable reason for failing to follow the prescribed treatment." *Orn v. Astrue*, 495 F.3d 625, 636-37 (9th Cir. 2007). Acceptable reasons for failing to follow prescribed treatment include the treatment being contrary to the claimant's religion, the fact that similar treatment has been tried in the past with unsuccessful results, the recommended treatment being of great magnitude or unusual nature, or that the treatment would involve amputation of an extremity. 20 C.F.R. §§ 404.1530, 416.930.

      The ALJ reasonably concluded that Plaintiff's vision problems improved with treatment, which undermined his hearing testimony. At the hearing, Plaintiff explained that, beginning in early 2017, his conjunctivitis symptoms began to worsen. Tr. 97. He testified that he had to retire early from his job because the building installed LED lights, and that he had limited ability to use computers because of the light they emit. Tr. 98. He shared that "there's no treatment available for it," and the only thing that works is to avoid exposure to LED, bright, or flickering lights. Tr. 99. The ALJ compared these allegations to Plaintiff's medical history, however, and found it did not match up with Plaintiff's allegations. Tr. 23-24. For example, in February 2017, the month he allegedly became disabled, Plaintiff told an ophthalmologist that "with the use of topical steroids his symptoms abated." Tr. 465. "He has used topical steroids for many years," the doctor wrote, "and when he has a flare up of uveitis the medication is quickly effective, by his estimate." Tr. 465. While the doctor noted that a change in lighting might help, he added that when Plaintiff had symptom recurrences, "they historically have been treated effectively." Tr. 469. Furthermore, even though medication improved Plaintiff's vision issues, he declined to use it. Tr.

6 – OPINION & ORDER

20. In March 2017, Plaintiff's provider offered "potential treatment to prevent [his] flares if they are particularly bothersome," including clinical trials. Tr. 495. He declined treatment for, light sensitivity, however, telling one provider that "[h]e is not interested in any medications, such as Lamictal for photophobia or triptan for headaches." Tr. 528, 530. Instead, Plaintiff told the Agency he used "plant materials, herbs, vitamins & minerals" to deal with his conditions. Tr. 272, 318. The improvement Plaintiff experienced with treatment, and his refusal to entertain further medical treatment at the suggestion of his doctors, provided a clear and convincing reason, supported by substantial evidence for the ALJ to discount Plaintiff's symptom testimony about his difficulty with LED lighting.

*B. Daily Activities*

The ALJ also discounted Plaintiff's subjective symptom testimony because it was inconsistent with his daily activities. Tr. 23. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). The ALJ found Plaintiff's ability to carry on with many normal activities of daily life like attending the theater, shopping, and going out with friends undermined his testimony about light sensitivity. Tr. 20.

7 – OPINION & ORDER

The ALJ reasonably concluded that several of Plaintiff's daily activities conflicted with his testimony about vision symptoms. To discount a Plaintiff's testimony, and ALJ must cite daily activities that "meet the threshold for transferable work skills" or "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639. The ALJ contrasted Plaintiff's ability to "attend[] the theater, shop in stores for groceries, and go[] out to eat with friends" with his testimony about otherwise needing to avoid exposure to LED, bright, or flickering lights. Tr. 99. The ALJ made specific references to the record when juxtaposing these activities--which likely expose Plaintiff to the kinds of light he professes to avoid--with Plaintiff's hearing testimony. Tr. 20 (citing Tr. 102, 269-70). The ALJ also noted that, for several months after his alleged disability onset date, Plaintiff worked in an office that had LED lighting. Tr. 97. The ALJ found Plaintiff's ability to tolerate that lighting for several months undermined his allegations about needing to completely avoid it. Tr. 20. In sum, this was another clear and convincing reason for the ALJ to rely upon to discount Plaintiff's testimony about visual impairments.

## II.   Lay Witness Testimony

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122

Eight of Plaintiff's friends and former co-workers submitted questionnaires or letters describing Plaintiff's difficulty with his vision and being exposed to LED lighting. Tr. 359-92. These statements all directly tracked Plaintiff's testimony about difficulty with bright or flickering lights, and headaches or other symptoms that Plaintiff suffers as a result. Tr. 359-92.

The ALJ provided specific, germane reasons to discount the lay witness testimony, which mirrored Plaintiff's own. Where lay witness testimony does not describe any limitations not already described by the claimant, "the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina*, 674 F.3d at 1122. Here, the ALJ repeated the clear and convincing reasons for discounting Plaintiff's self-reports, discussed above, when considering the similar statements from Plaintiff's friends. Tr. 23. These were sufficiently specific, germane reasons for discounting this testimony, and the ALJ's decision to do so was supported by substantial evidence in the record.

9 – OPINION & ORDER

### III. Medical Opinion Evidence

For disability claims filed on or after March 27, 2017, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The 2017 regulations eliminated the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the 2017 regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2-3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(b). The court must, moreover, continue to consider whether the ALJ's

analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."). *Id.*

### A. Dr. Collin Blattner

On October 21, 2017, Dr. Collin Blattner examined Plaintiff and gave his opinion that Plaintiff had ankylosing spondylitis, history of Reiters disease, acute LED light sensitivity, and history of uveitis. Dr. Blattner opined Plaintiff had "significant documentation that he will need to be removed from environments with LED, fluorescent lights, and bright lights due to his condition." Tr. 524. Dr. Blattner opined that Plaintiff also had evidence of severe range of motion loss in his neck. Dr. Blattner opined Plaintiff could stand for 10 to 15 minutes at a time, walk 1 to 2 miles at a time, and sit without limitation. Plaintiff could not look up due to his severe range of motion deficit in his neck. Tr. 524. Dr. Blattner opined Plaintiff should avoid any environment with LED, fluorescent lights, and bright lights. Tr. 524.

The ALJ found Dr. Blattner's opinion to be "mostly persuasive," but rejected the limitation to standing for 10 to 15 minutes, the limitation on looking up, and opinion about the extent of Plaintiff's light sensitivity. The ALJ stated that this was because Plaintiff testified that he could walk for 1 to 2 miles at a time and because Plaintiff testified that he could occasionally help with political gatherings involving standing and holding a sign. The ALJ then cited Plaintiff's ability to travel to Virginia a couple of times a year, go to the theater with friends, and do yoga. The ALJ also asserted the doctor based his opinion on Plaintiff's subjective complaints rather than objective medical evidence because there was no testing to show Plaintiff's response to various types of lighting. Tr. 21.

11 – OPINION & ORDER

The ALJ sufficiently considered both the supportability and consistency of Dr. Blattner's opinion. The supportability factor looks to the relevant objective medical evidence—that is, clinical signs and diagnostic findings, see 20 C.F.R. §§ 404.1502(c), (f), (g)—and the supporting explanations a medical source provides for their opinions. 20 C.F.R. § 404.1520c(c)(1). "An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation" when evaluating a medical opinion. *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). The consistency factor requires an ALJ to evaluate an opinion's persuasiveness in relation to its consistency with evidence from other sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *Woods*, 32 F.4th at 792. In terms of supportability, the ALJ noted that despite Dr. Blattner's statement that Plaintiff could not be under LED lights, Dr. Blattner did not perform any testing that supported that theory. Tr. 21. In fact, Plaintiff's eye testing was unremarkable and Dr. Blattner merely noted that light seemed to bother him. Tr. 518. Plaintiff counters that other doctors' findings support Dr. Blattner's conclusion that Plaintiff should avoid exposure to LED lighting. Pl. Reply, ECF No. 17 at 3-4. But as the ALJ noted, these other medical opinions were unpersuasive, lacked support from objective medical evidence, and Plaintiff does not challenge the ALJ's conclusion that these other medical reports were unfounded. *See* Tr. 21-22. Moreover, in terms of consistency, the ALJ found Dr. Blattner's statements about Plaintiff being able to stand for only 10 to 15 minutes and not being able to look up conflicted with evidence showing that that Plaintiff could walk up to 9 miles a day, traveled out of state, went to the theater, did yoga, and went to political gatherings. Tr. 99-100, 110, 270. Plaintiff argues this evidence does not undermine Dr. Blattner's conclusions about physical limitations. Pl. Reply, ECF No. 17 at 3-4. But these arguments are an effort to have the Court assign its own weight to the evidence, and adopt a competing inference from it, which is

beyond the scope of review. *Ahearn*, 988 F.3d at 1115 ("We may not reweigh the evidence or substitute our judgment for that of the ALJ."). Because the ALJ reasonably considered the supportability and consistency of Dr. Blattner's opinion about Plaintiff's difficulty with LED lighting, and the ALJ's conclusion and inferences were supported by substantial evidence, the Court will not disturb the ALJ's finding that those limited aspects of Dr. Blattner's opinion were unpersuasive.

## IV.    Step Five

Plaintiff also argues the ALJ committed an independent error at step five by failing to include the vision limitations expressed in Plaintiff's testimony, lay witness testimony, and Dr. Blattner's opinion in her hypotheticals to the VE. Pl. Br., ECF No. 15 at 12-13. As discussed above, however, the ALJ reasonably discounted Plaintiff's and lay witness testimony about the extent of his light sensitivity. Tr. 23. The ALJ also reasonably evaluated the supportability and consistency of Dr. Blattner's opinion about Plaintiff's vision. Tr. 23. This step five argument merely rehashes Plaintiff's prior arguments and therefore fails for the reasons previously articulated. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008) (rejecting a step five argument that "simply restates" arguments about medical evidence and testimony); *Hairston v. Saul*, 827 Fed. App'x 772, 773 (9th Cir. 2020) (summarily rejecting claimant's arguments that RFC and step-five findings were unsupported by substantial evidence as "derivative of her preceding arguments addressed and rejected above."); *see also Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988) (acknowledging there is no requirement that testimony for which the ALJ has provided specific and legitimate reasons to discount be included in the hypothetical given the VE). Because Plaintiff's step five argument adds nothing new, the Court finds the ALJ did not err at step five either.

## CONCLUSION

For the reasons given above, I AFFIRM the Commissioner's decision and DISMISS this case.

IT IS SO ORDERED.

DATED:___1/31/2024_____.

*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge